IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **GREGORY D. JONES,** | |
| **Plaintiff,** | |
| v. | Case No. 25-cv-00531-SPM |
| C VAUGHN, JOHN DOE 1, JOHN DOE 2, JOHN DOE 3, JOHN DOE 4, JOHN DOE 5, JOHN DOE 6, CRYSTAL CROWE, and LATOYA HUGHES, | |
| **Defendant.** | |

# MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

Plaintiff Gregory Jones, an inmate of the Illinois Department of Corrections (IDOC) who is currently incarcerated at Pinckneyville Correctional Center, filed the instant lawsuit pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. (Doc. 1). The Complaint (Doc. 1) is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A.

### THE COMPLAINT

In the Complaint, Plaintiff asserts that on October 5, 2024, he asked the sergeant of 1 Cellhouse for protective custody because "the Vice-Lord street gang" has an "ongoing 'hit' or threat to do harm" against him. (Doc. 1, p. 19). Plaintiff explains that the threat against him is connected to a "beating" he received from a member of the Vice-Lord gang on November 25, 2021, when he was housed at Western Illinois Correctional Center. Later that day, Plaintiff was

interviewed for protective custody by Officer Vaughn. Vaughn told Plaintiff that he would be "processed." Rather than being placed in protective custody, however, Plaintiff was moved to disciplinary segregation for 32 days and fraudulently placed on investigatory status by Vaughn, John Doe 1, and John Doe 2. (*Id.* at p. 19, 20). John Doe 4, the warden over cell placement, ratified Plaintiff's transfer to disciplinary segregation. (*Id.* at p. 20). Plaintiff asserts that placing him in disciplinary segregation was in violation of Administrative Directive 506310, which prohibits protective custody from being located on the same gallery as disciplinary segregation and requires housing accommodations in protective custody to be comparable to general population. (*Id.* at p. 19).

While in segregation, Plaintiff states that he was treated "egregiously." (Doc. 1, p. 19). There was "spittle" in his food, the constant banging on the cells and noise by other inmates caused him to suffer hearing loss, and the cell light was kept on all night. (*Id.* at p. 19, 21). He was deprived of his property, and property workers stole $200 worth of his belongings. (*Id*. at p. 19). Plaintiff was told by a mental health staff member that if he wanted to be released from segregation, then he should retract his protective custody request. (*Id.* at p. 21).

Plaintiff asserts that Director Latoya Hughes failed to activate an administrative directive establishing protective custody in medium and minimum facilities, and thus, she has fostered this practice of placing inmates in disciplinary segregation when they request protective custody. (Doc. 1, p. 21). More recently, John Doe 4 has refused to comply with an order of the Administrative Review Board dated February 26, 2025. (*Id.* at p. 20).[1] John Doe 4 also has not responded to Plaintiff's follow-up request to be placed in protective custody, dated March 26, 2025. (*Id.*).

Plaintiff requests monetary damages, to be placed in protective custody, and for the

---

[1] The Administrative Review Board order states "the grievance is not to be utilized for requests. Your request for PC has been forwarded to the Warden for handling. This was sent to I.A." (Doc. 1, p. 11).

issuance of an administrative order establishing protective custody in medium and minimum security facilities. (Doc. 1, p. 33).

**PRELIMINARY DISMISSALS**

Plaintiff asserts that John Doe 3, who is the described as the "warden over the trust fund," John Doe 5, who is described as the "trust officer," John Doe 6, who is described as the "business officer," and Crystal Crowe, the former warden at Pinckneyville Correctional Center, were all involved, to varying degrees, in the wrongful taking of money from his trust fund account on July 31, 2023, and November 14, 2024. (Doc. 1, p. 20-21). These facts fail to plead a claim for a constitutional violation.

The Fourteenth Amendment guarantees the right to be free from deprivations of property by state actors. If the state provides an adequate remedy, however, Plaintiff has no civil rights claim. *Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984) (availability of damages remedy in state claims court is an adequate, post-deprivation remedy). The Seventh Circuit has held that Illinois provides an adequate post-deprivation remedy in an action for damages in the Illinois Court of Claims. *Murdock v. Washington*, 193 F.3d 510, 513 (7th Cir. 1999) (citations omitted) ("A prisoner has adequate process where an adequate post-deprivation remedy is available to redress unauthorized confiscations of property."). Therefore, Plaintiff has no Fourteenth Amendment claim for the unauthorized taking of his money from his trust fund account in federal court, and his intended claims regarding the taking of his money are dismissed. Plaintiff should separately pursue relief for the deprivation of his property in the Illinois Court of Claims.

**DISCUSSION**

Based on Plaintiff's allegations and his articulation of his claims, the Court designates the following counts:

| | |
|---|---|
| **Count 1:** | Eighth Amendment claim against Vaughn, John Doe 1, John Doe 2, and Hughes for placing Plaintiff in unconstitutional conditions of confinement from October 5, 2024, through November 7, 2024. |
| **Count 2:** | Fourteenth Amendment claim against Vaughn, John Doe 1, John Doe 2, and Hughes for placing Plaintiff in segregation from October 5, 2024, through November 7, 2024, without due process of law. |
| **Count 3:** | Fourteenth Amendment claim against Hughes for failing to implement an administrative directive establishing protective custody in medium and minimum security facilities. |
| **Count 4:** | Eighth Amendment failure to protect claim against John Doe 4 for failing to place Plaintiff in protective custody. |

The parties and the Court will use this designation in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly*[2] pleading standard.**

### Count 1

Plaintiff states that Defendants Vaughn, John Doe 1, and John Doe 2 subjected him to cruel and unusual punishment by placing him in disciplinary segregations for 32 days, rather than protective custody. He claims that Defendant Hughes violated his Eighth Amendment right to be free from cruel and unusual punishment by failing to implement an administrative provision concerning protective custody in medium and minimum security facilities.

The failure to provide protective custody and the act of placing Plaintiff in segregation do not, independently, violate the constitution. *See Boyce v. Moore,* 314 F. 3d 884, 891 (7th Cir. 2002). The Eighth Amendment prohibition on cruel and unusual punishment forbids the unnecessary and wanton infliction of pain. *See Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (citation omitted). To succeed on a claim related to conditions of confinement, a plaintiff must

---

[2] *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

plead that (1) he was denied the minimal civilized measure of life's necessities creating an excessive risk to his health or safety; and (2) the defendant acted with deliberate indifference to a substantial risk of serious harm to him. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

As pled, Plaintiff has failed to state a claim for unconstitutional conditions of confinement. The conditions Plaintiff experienced in segregation, as described, do not amount to an objectively excessive risk to his health or safety. *See Isby v. Brown,* 856 F. 3d 508, 522 (7th Cir. 2017) (finding that the plaintiff's conditions in administrative segregation for several years, which including 24-hour lighting, cold temperatures, thin mattress, and limited showers and exercise, did not violate the Eighth Amendment).

Even if Plaintiff has sufficiently pled that his time in segregation posed a serious risk to his health and safety, he has not described any of the named Defendants as having knowledge of his conditions. Thus, it cannot be said that Defendants acted with deliberate indifference to a substantial risk of serious harm to Plaintiff.

And finally, failure to follow IDOC policy or procedures regarding protective custody do not establish a constitutional violation. *See Wozniak v. Adesida*, 932 F.3d 1008, 1011 (7th Cir. 2019) ("[A] constitutional suit is not a way to enforce state law through the back door."); *Scott v. Edinburg,* 346 F.3d 752, 760 (7th Cir. 2003) (observing that "42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws or… departmental regulations"). Therefore, Plaintiff has not stated a claim by alleging the Defendants failed to follow their own policies regarding protective custody. Plaintiff has failed to state a claim for unconstitutional conditions of confinement, and Count 1 is dismissed.

**Count 2**

When a plaintiff brings an action under Section 1983 for procedural due process violations,

he must plead that the state deprived him of a constitutionally protected interest in "life, liberty, or property" without due process of law. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). A court reviewing a due process claim must, therefore, engage in a two-part inquiry: (1) was there a protected interest at stake that necessitated the protections demanded by due process; and (2) was the disciplinary hearing process conducted in accordance with procedural due process requirements?

"Prisoners do not have a constitutional right to remain in the general population." *Isby*, 856 F. 3d at 524. *See also Hardaway v. Meyerhoff,* 734 F.3d 740, 743 (7th Cir. 2013) ("an inmate's liberty interest in avoiding disciplinary segregation is limited") (citing *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697 (7th Cir. 2009)). Nor do inmates have a liberty interest in protective custody placement. *See Kellas v. Lane,* 923 F. 2d 492, 495 (7th Cir. 1990) (protective custody regulations do not create a due process claim). A protected liberty interest "is triggered only when the confinement imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Lisle v. Welborn,* 933 F.3d 705, 721 (7th Cir. 2019) (internal quotations and citations omitted). In assessing whether placement in segregation imposes atypical and significant hardship, the Court looks to the length of a prisoner's confinement in segregation in combination with the conditions he endured there. *See Kervin v. Barnes*, 787 F.3d 833, 836-37 (7th Cir. 2015).

Plaintiff states that he was fraudulently placed in segregation under investigative status for 32 days. While in segregation, he found spittle in his food, the conditions were extremely loud as there was constant noise and other inmates would beat on the walls and doors, and the cell light was kept on all night. These conditions, as pled, do not establish that Plaintiff was denied a liberty interest, and so due process was not required prior to placing him in segregation. *See Hardaway,*

734 F.3d at 744 (inmate not deprived of liberty interest when he spent 6 months in segregation behind a steel door with a confrontational cellmate and had only weekly access to shower and prison yard); *Thomas v. Ramos,* 130 F. 3d 754, 760-61 (7th Cir. 1997) (inmate not deprived of an liberty interest when he spent 70 days in a small segregation cell with a cellmate and was denied access to classes, the gym, a work assignment, and day room access); *McCoy v. Atherton,* 818 F. App'x 538, 542 (7th Cir. 2020) (holding that 3 months in segregation in a dirty cell near physically and mentally ill inmates did not impose an atypical and significant hardship); *Obriecht v. Raemisch,* 565 F. App'x 535, 540 (7th Cir. 2014) (ruling that 78 days in "deplorable conditions" did not implicate a liberty interest, but that plaintiff might have challenged the conditions of confinement while in segregation) (citing *Marion,* 559 F.3d at 697-98). Accordingly, Count 2 is dismissed.

### Count 3

Plaintiff states that Director Hughes has violated his Fourteenth Amendment right by not "activating administrative directive provision for p.c. in medium and minimum facilities." (Doc. 1, p. 21).

As discussed above, there is no liberty interest in protective custody placement, s*ee Kellas,* 923 F. 2d at 495, and his allegations do not support an equal protection claim. *See Owens v. Funk,* 760 F. App'x 439, 443 (7th Cir. 2019) (lack of protective custody at a medium security facility did not violate the inmate's right to equal protect). Count 3 is dismissed.

### Count 4

To state a failure-to-protect claim, a plaintiff must allege facts from which a court could conclude that (1) he faces a substantial risk of serious harm and (2) the defendants knew of and disregarded that risk. *Wilson v. Ryker,* 451 F. App'x 588, 589 (7th Cir. 2011) (citing *Farmer,* 511

U.S. at 834, 837).

Plaintiff asserts that John Doe 4 has been notified twice of the threat to his safety and his requests for protective custody, but John Doe 4 has failed to respond to the requests. (Doc. 1, p. 20). These allegations are sufficient at this stage to state a claim. Count 4 will proceed against John Doe 4.

## MOTION FOR EMERGENCY INJUNCTION

Plaintiff has filed a motion seeking emergency injunctive relief. (Doc. 7). In the motion, Plaintiff restates that he has not received responses to his requests for protective custody – the grievance dated October 15, 2024, that was forwarded by the Administrative Review Board to the warden on February 26, 2025, and a letter sent to John Doe 4, the warden over cell placement, on March 26, 2025. (*Id.* at p. 8, 9). On May 9, 2025, Plaintiff was slipped a note stating that he is still "green lit for harm by the Vice-Lords." After receiving the note, Plaintiff spoke to Sergeant Stower and requested to be placed in protective custody. Sergeant Stower told Plaintiff, "We don't do p.c." Plaintiff asserts that without injunctive relief from the Court ordering his transfer to protective custody or to a safer institution, his life is in danger.

An emergency injunction is an "extraordinary and drastic remedy" for which there must be a "clear showing" that a plaintiff is entitled to relief. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quoting 11A Charles Alan Wright, Arthur R Miller, & Mary Kay Kane, Federal Practice and Procedure §2948 (5th ed. 1995)). The purpose of such an injunction is "to minimize the hardship to the parties pending the ultimate resolution of the lawsuit." *Faheem-El v. Klincar*, 841 F.2d 712, 717 (7th Cir. 1988). In order to obtain a preliminary injunction or a temporary restraining order (TRO), the plaintiff has the burden of demonstrating:

- a reasonable likelihood of success on the merits;
- no adequate remedy at law; and

- irreparable harm absent the injunction.

*Planned Parenthood v. Comm'r of Ind. State Dep't Health*, 699 F.3d 962, 972 (7th Cir. 2012). All three requirements must be satisfied before the Court can consider whether preliminary injunctive relief is warranted.

Without expressing any opinion on the merits of any of Plaintiff's other claims for relief, the Court concludes that a TRO should not be issued in this matter. The Prison Litigation Reform Act requires that any grant of prospective relief, including TROs, "shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs" and cannot issue "unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626. Federal courts must exercise equitable restraint when asked to take over the administration of a prison, something that is best left to correctional officials and their staff. *See Sandin v. Conner*, 515 U.S. 472, 482 (1995); *Rizzo v. Goode*, 423 U.S. 362, 379 (1976). Although Plaintiff states that he recently asked one correctional officer for protective custody after the threatening note, it is not clear what other internal avenues he has utilized to seek a transfer to a protective environment and if the appropriate officials have been notified the recent threat. Thus, the Court will not order the transfer of Plaintiff to general population at another facility or to a facility with protective custody without providing notice to prison officials and giving them an opportunity to respond. Accordingly, to the extent Plaintiff is seeking a TRO, the request is denied.

Plaintiff's request for a preliminary injunction will remain pending. John Barwick, the warden of Pinckneyville Correctional Center, will be added as a defendant in his official capacity for the purpose of responding to Plaintiff's requests for preliminary and permanent injunctive

relief, implementing any injunctive relief that may be ordered, and responding to discovery aimed at identifying the unknown defendant. Defendant Warwick is **ORDERED** to respond to the request for a preliminary injunction within 14 days of service of the pleadings in this case, at which point the Court will determine the need for a hearing on the motion requesting a preliminary injunction.

## DISPOSITION

For the reasons stated above, the Complaint survives preliminary review pursuant to Section 1915A.

**COUNT 4** will proceed against John Doe 4, the warden over cell placement. The Clerk of Court shall **ADD** John Barwick, the warden Pinckneyville Correctional Center, as a defendant in his official capacity only for the purpose of responding to and implementing any preliminary or permanent injunctive relief that may be ordered and responding to discovery aimed at identifying the John Doe Defendant.

**COUNTS 1, 2,** and **3** are **DISMISSED.** Because there are no surviving claims against Vaughn, John Does 1, 2, 3, 5, and 6, Crowe, and Hughes, they are dismissed from this case, and the Clerk shall terminate them as defendants on the docket.

The request for a TRO is **DENIED**. Court **DEFERS** ruling on the request for preliminary injunction. (Doc. 7). **Defendant Barwick shall respond to the request for a preliminary injunction within 14 days of service.**

The Clerk of Court **SHALL** prepare for Barwick and John Doe 4 (once identified) the following: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each defendants' place of employment. If a

defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the defendant, and the Court will require the defendant pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, his last known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants should respond to the issues stated in this Merit Review Order.**

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 14 days after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. See FED. R. CIV. P. 41(b).

IT IS SO ORDERED.

DATED: June 2, 2025

                                                                   *s/Stephen P. McGlynn*
                                                                   **STEPHEN P. MCGLYNN**
                                                                   **United States District Judge**

#### NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days** or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.