IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **GREGORY D. JONES,** | |
| **Plaintiff,** | |
| v. | Case No. 25-cv-00531-SPM |
| **JOHN DOE 4,** *Warden over Cell Placement,* and **JOHN BARWICK,** *Warden,* | |
| **Defendants.** | |

## MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

This matter is before the Court on Plaintiff's motion seeking emergency injunctive relief. (Doc. 7). For the following reasons, the motion will be denied.

### BACKGROUND

Plaintiff Gregory Jones, an inmate of the Illinois Department of Corrections who is currently incarcerated at Pinckneyville Correctional Center, commenced this civil action on April 9, 2025, pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights. In the Complaint, Plaintiff asserts that in November 2021, while he was at Western Illinois Correctional Center, he was physically assaulted by another inmate who was a member of the Vice-Lords gang. Since the assault, he has continued to receive threats on his life, and he has sought and been denied protective custody. After review of the Complaint pursuant to 28 U.S.C. §1915A (Merit Review Order), Plaintiff is proceeding on a claim for injunctive relief and a claim against John Doe 4, the warden over cell placement, for failing to respond to ongoing threats to Plaintiff's safety and his requests for protective custody (Count 4). (Doc. 8).

On May 13, 2025, Plaintiff filed a motion requesting emergency injunctive relief, which is

now before the Court. (Doc. 7). In the motion, Plaintiff restates that he has not received responses to his requests for protective custody: (1) a grievance regarding his protective custody request written on October 15, 2024, that was forwarded by the Administrative Review Board to the warden and internal affairs on February 26, 2025; and (2) a letter Plaintiff sent to John Doe 4, the warden over cell placement, on March 26, 2025, following-up on the October 15 grievance. (*Id.* at p. 8, 9). On May 9, 2025, Plaintiff was slipped a note from another inmate stating that he is still "green lit for harm by the Vice-Lords." (*Id.* at p. 2). After receiving the note, Plaintiff spoke to Sergeant Stower and requested to be placed in protective custody. Sergeant Stower told Plaintiff, "We don't do p.c." (*Id.*). Plaintiff asserts that without injunctive relief from the Court ordering his transfer to protective custody or to a safer institution, his life is in danger. (*Id.* at p. 3).

On June 2, 2025, in the Merit Review Order, the Court denied the motion for an emergency injunction to the extent Plaintiff was seeking a temporary restraining order. (Doc. 8, p. 9). John Barwick, the warden of Pinckneyville Correctional Center (Pinckneyville), was ordered, however, to respond to Plaintiff's allegations to the extent Plaintiff was seeking a preliminary injunction. Barwick has filed a response in opposition, and Plaintiff filed a reply brief. (Doc. 21, 25). For the following reasons, the motion is denied.

## MOTION FOR PRELIMINARY INJUNCTION

A preliminary injunction is an "extraordinary and drastic remedy" for which there must be a "clear showing" that a plaintiff is entitled to relief. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quoting 11A Charles Alan Wright, Arthur R Miller, & Mary Kay Kane, Federal Practice and Procedure §2948 (5th ed. 1995)). The purpose of such an injunction is "to minimize the hardship to the parties pending the ultimate resolution of the lawsuit." *Faheem-El v. Klincar*, 841 F.2d 712, 717 (7th Cir. 1988). In order to obtain a preliminary injunction, the plaintiff has the burden of demonstrating:

- a reasonable likelihood of success on the merits;
- no adequate remedy at law; and
- irreparable harm absent the injunction.

*Planned Parenthood v. Comm'r of Ind. State Dep't Health*, 699 F.3d 962, 972 (7th Cir. 2012). All three requirements must be satisfied before the Court can consider whether preliminary injunctive relief is warranted. Plaintiff has not met this high burden.

First, Plaintiff has not demonstrated that he likely to succeed on the merits of his Eighth Amendment failure to protect claim against John Doe 4. To prevail on a failure-to-protect claim, a plaintiff must allege facts from which a court could conclude that (1) he faces a substantial risk of serious harm and (2) the defendants knew of and disregarded that risk. *Wilson v. Ryker*, 451 F. App'x 588, 589 (7th Cir. 2011) (citing *Farmer v. Brennan*, 511 U.S. 825, 834, 837). Assuming there was a serious risk of Plaintiff being attacked by other inmates, Plaintiff has not presented evidence to substantiate his claim that John Doe 4 was aware of and disregarded the threats to Plaintiff's safety.

In the Complaint, Plaintiff alleges that John Doe 4 refused "to comply with ARB directive dated 2-26-25" and has "not responded to [his] follow-up request dated 3-26-25" for protective custody. (Doc. 1, p. 20). The "ARB directive" that Plaintiff is referring to is a response to his October 15, 2024 grievance complaining about being placed in segregation after he requested protective custody. (Doc. 1, p.13-14; Doc. 7, p. 8). In the response to the grievance, the Administrative Review Board (ARB) writes, "The grievance process is not to be utilized for request. Your request for PC has been forwarded to the Warden for handling. This was sent to I.A." (Doc. 7, p. 8). Plaintiff's March 26, 2025, follow-up request is a letter addressed to "Warden of PNK Placement" and in the letter, Plaintiff informs the "Warden of PNK Placement" that his grievance regarding protective custody had been forwarded to the warden by the ARB and that he, Plaintiff, is still in danger and "fearful at dayroom and commissary." (Doc. 7, p. 9). Plaintiff writes,

"Please comply with ARB." (*Id*.). These two communications are not sufficient to for the Court to infer personal responsibility on the part of John Doe 4. Based on the plain language of the ARB response, Plaintiff's grievance was sent to the warden of Pinckneyville and the internal affairs unit, not to an assistant warden in charge of cell placement, which is how John Doe 4 is described in the Complaint. (Doc. 1, p. 3, 20). Thus, it is not clear how John Doe 4 would have been notified by the ARB response that Plaintiff was requesting protective custody.

As for the letter addressed to John Doe 4, warden over cell placement, dated March 26, 2025 (Doc. 7, p. 9), expressing that Plaintiff still felt that he was in danger and asking John Doe 4 to comply with the ARB response, generally a single letter without any suggestion that it might have been received is not enough to attribute personally responsibility on the person. *See e.g., Burks v. Raemisch*, 555 F.3d 592, 595-96 (7th Cir. 2009). Additionally, the contents of the letter are not detailed enough to establish that John Doe 4 was aware of a specific danger to Plaintiff's safety. In the letter, Plaintiff states he feels in danger during commissary and dayroom time, but the Seventh Circuit has stated these types of general statements of fear, without more, are "insufficient to alert officers to a specific threat." *Klebanowski v. Sheahan,* 540 F. 3d 633, 639 (7th Cir. 2008). Thus, the March 26, 2025 letter is not sufficient to show that John Doe 4 had knowledge of a substantial risk of harm and failed to take appropriate steps to protect Plaintiff. *See Doe v. Univ. of Southern Ind.*, 43 F. 4th 784, 791 (7th Cir. 2022) (stating that in assessing the merits for the purposes of a preliminary injunction motion, the court does not accept allegations as true or give the plaintiff "the benefit of all reasonable inferences in his favor"). As it is not clear what other evidence Plaintiff plans to present to demonstrate that John Doe 4 had actual knowledge of a specific threat to his safety, a key element of the case, Plaintiff has not met the burden of showing that he has a likelihood of succeeding on the merits. *See Ill. Republican Party v. Pritzker*, 973 F. 3d 760, 762 (7th Cir. 2020).

Second, the Court finds that Plaintiff has failed to demonstrate that he will likely suffer irreparable harm without the Court's involvement. At this point, Plaintiff is asserting a generalized future threat to his safety. He states that the threats he is receiving "today" are still in response to the altercation that took place almost four years ago at a different facility. (Doc. 25, p. 1-2). Plaintiff does not claim that since that time he has been attacked or injured by other inmates. In his reply brief, Plaintiff states that older members of the Vice-Lords gang are preventing the younger members from attacking him. (Doc. 25, p. 3). But he fears for what will happen when he "is separated" from the older members. (*Id.*). Thus, Plaintiff speculates about a future danger, and the facts as asserted by him do not establish that he currently faces imminent harm.

Additionally, while there is evidence to support that Plaintiff's verbal request for protective custody was disregarded by Sergeant Stowers on May 9, 2025, Plaintiff does not assert that he has recently used other institutional procedures to obtain the relief he seeks since he canceled his protective custody request in October 2024 (Doc. 7, p. 10; Doc. 25, p. 5), such as filing a new grievance, submitting a new request to Officer Vaughn, the coordinator for protective custody, or speaking with his counselor or a member of internal affairs. Mandatory preliminary injunctions requiring the defendant to take an affirmative act are viewed with particular caution and are "sparingly issued[.]" *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020). The Court will, therefore, not direct Warden Barwick to immediately transfer Plaintiff to a facility equipped to house protective custody inmates when there is nothing in the record establishing that Plaintiff has first properly used the internal processes available to him.

And finally, the Court notes that Plaintiff's contention does not seem to be that he is in fact being denied protective custody but rather, that he disagrees with the process in obtaining protective custody. According to the declaration of Assistant Warden of Operations Jami Karales, as a medium-security facility, Pinckneyville is not "set up" to "house individuals in custody who

have been granted protective custody status." (Doc. 22-1, p. 3). Accordingly, he states:

> [W]hen a request for protective custody is received from an inmate at Pinckneyville, after the initial investigational interview is completed, the matter is submitted to Warden John Barwick, or the acting Chief Administrative Officer, for review and approval. Assuming approval, the matter is then forwarded to IDOC in Springfield for further review and coordination. While the protective custody request is in process, the individual in custody may be temporarily transferred to Pinckneyville's restrictive housing unit for their own safety and security, particularly in cases where the individual states other inmates are trying to harm him.

(Doc. 22-1, p. 3). The practice of holding inmates in segregation while their protective custody request is being processed is confirmed in a declaration written by Thomas Smith, as fellow inmate at Pinckneyville, which was submitted by Plaintiff with his motion for emergency injunction. (Doc. 7, p. 6). Smith attests, "As of now the 'policy' used for protective custody is to be placed in a disciplinary status until you're either approved or denied for protective custody." (*Id.*). Smith asserts, however, that this policy is used to "intimidate and/or dissuade people from utilizing protective custody as a means to keep themselves safe." (*Id.*). Plaintiff likewise believes this policy is implemented as a form of punishment and retaliation. Plaintiff argues that he canceled his October 2024 protective custody request because the conditions of segregation – 24 hour illumination, excessive noise, and spittle found in his food – are akin to "torture," and that placing an inmate in segregation instead of protective custody is in violation of IDOC regulations. (Doc. 25, p. 5-6). But the Court has already addressed these allegations and found that Plaintiff did not state an Eighth Amendment claim for cruel and unusual punishment because he was placed in segregation after submitting a request for protective custody. (*See* Doc. 8, p. 5). The Court found that the conditions of segregation that Plaintiff endured, as described in the Complaint, did not amount to an objectively excessive risk to his health or safety and to the extent Pinckneyville was violating IDOC regulations in implementing their protective custody policy, failure to follow IDOC regulation did not equate to a constitutional violation. (Doc. 8). Accordingly, the Court does

not find that Plaintiff would suffer irreparable harm to the extent he is subject to Pinckneyville protective custody procedures and may be placed in segregation while his protective custody request is being processed.

Because Plaintiff has failed to demonstrate that a reasonable likelihood of success on the merits of his claim and that he will likely suffer irreparable harm without the issuance of emergency injunctive relief, his motion is denied.

## DISPOSITION

For the reasons stated above, the Motion for an Emergency Injunction is **DENIED**. (Doc. 7).

**IT IS SO ORDERED.**

**DATED: August 8, 2025**

                                              *s/Stephen P. McGlynn*
                                              **STEPHEN P. MCGLYNN**
                                              **United States District Judge**